**UNITED STATES**

v.

**1,800.2625 WINE GALLONS OF DISTILLED SPIRITS etc.**

**No. 8178.**

United States District Court
W. D. Missouri, W. D.

Jan. 11, 1954.

Edward L. Scheufler, U. S. Atty., Kansas City, Mo., Joseph L. Flynn, Asst. U. S. Atty., St. Joseph, Mo., for plaintiff.

Jerome Walsh, Kansas City, Mo., for claimant, John Patrick Goulding.

RIDGE, District Judge.

When the catastrophic flood of July 13, 1951, descended on Kansas City, Missouri, claimant herein, John Patrick Goulding, was the owner of 2613.60 wine gallons of wine and champagne; and 1,800.2625 wine gallons of distilled spirits which were then stored and held for sale in the Last Chance Tavern and Shawnee Club, both of which places were engulfed by that deluge. Federal Retail Liquor Dealer's Special Tax Stamps had been issued, covering each of said premises. At approximately 11:00 a. m., on

the above date, the aforesaid wines and distilled spirits were inundated by impure and unsanitary flood waters so that they were "held (for several days) under unsanitary conditions whereby (they) may have become contaminated with filth, or whereby (they) may have been rendered injurious to health," within the ambit of Section 402 of the Federal Food, Drug, and Cosmetic Act. T. 21 U.S.C.A. § 342(a)(4). Sometime after the flood waters subsided, claimant, after having the cases and bottles containing the wine and distilled spirits washed with water from a hose, had them removed to residences located at 3437 Coleman Road and 3328 Karnes Boulevard, in Kansas City, Missouri. Tax stamps and other insignia on the bottles containing such liquors, had, as a consequence of the flood and washing, supra, become multilated, torn and separated from the bottles, so that they were "either wholly or partially misbranded within the meaning of Section" 403 of the Act. Thereafter, claimant had the aforesaid wine delivered to the Mid-Continent Distributing Company, Inc., in Kansas City, Missouri, where it was re-bottled, re-labeled and new stamps affixed thereto for the purpose of offering it for sale. Later, said wine was held and offered for sale at 1921 Main Street, in Kansas City, Missouri. The distilled spirits remained at the aforesaid places on Coleman Road and Karnes Boulevard.

April 8, 1953, the instant libel action was filed, seeking to condemn and forfeit both the wine and distilled spirits, in that the floor stock tax imposed thereon by the Internal Revenue Act of 1951, had not been paid, the Government contending that both the wine and distilled spirits were then subject to the tax, being held for resale, and failure to pay such tax was an attempt to defraud the United States. Cf. Title 26 U.S.C.A. §§ 3321, 3116, 3723, 2800, 3030 and 3195, as amended by Revenue Act of 1951. By stipulation of the parties, dated the same day, the Court entered an order whereby the wine aforesaid was declared forfeited and ordered destroyed. The distilled spirits were ordered returned to claimant. The premise of such order being that the wine in question had, in fact, been offered for sale, without first having the floor stock tax paid thereon; whereas the distilled spirits had not been so offered on or after November 1, 1951.

Before delivery of said distilled spirits to claimant was effected, an amended libel was filed, upon complaint of the Food and Drug Administration, seeking order of condemnation and forfeiture of the distilled spirits, pursuant to Section 304(a) of the Federal Food, Drug, and Cosmetic Act, under claim of adulteration and misbranding, within the meaning of Sections 402(a)(4) and 403(a) of the Act, as aforesaid. 21 U.S.C.A. §§ 334(a), 342(a)(4), 343(a).

The matters now before the Court are: (1) claimant's contention, raised by amended answer to the amended complaint, that from and after July 13, 1951, the distilled spirits in question were not held for sale, or offered for sale, by claimant, or any other person, but were stored at his "own residence for safe keeping and for no other purpose"; hence claimant says the above sections of the Federal Food, Drug, and Cosmetic Act are not applicable to his distilled spirits and no claim is established under the agreed facts which would permit the granting of any relief as here prayed; and (2) plaintiff's motion for summary judgment. As to the latter, it is conceded that, no facts being in dispute between the parties, if plaintiff's contention, supra, is not sustained, then the latter motion should be granted. Accordingly, the parties are in agreement that a disposition of the above matters wholly depends upon a determination of whether "the distilled spirits mentioned in (the amended libel) were held for sale while, or after having become, adulterated or misbranded * * * notwithstanding that on the date of seizure such spirits may have been held under unsanitary conditions whereby it may have become contaminated with filth," and "some of the labels, stamps and other insignia on the bottles containing the

distilled spirits were lost, soiled, dirty, torn and misshapen, which would require relabeling, if they were to again be offered for sale."

"This is a horse that is easily curried." When the flood waters submerged claimant's taverns and the liquor in question was inundated, there can be no question but that the distilled spirits were then "held for sale." Claimant's assertion to the contrary cannot be sustained. It is claimant's theory that because the aforesaid taverns were closed "about 9:00 a. m. on July 13, 1951," and that no sales or offers of sale of the distilled spirits in question were made or attempted after that date, to January 23, 1952, the date of the seizure thereof by the Alcohol Tax Unit, it is conclusively established that the adulteration and misbranding here claimed did not and could not have occurred at any time while such spiritous liquor "was held for sale." Therefore, claimant says, the subject-matter of the instant libel is not within the purview of the foregoing sections of the Federal Food, Drug, and Cosmetic Act, and this Court has no jurisdiction to declare a forefeiture thereof.

When claimant's taverns were closed, there is no contention made that claimant then intended voluntarily to cease business, abandon the spiritous liquor in question, or that he then determined to thereafter hold the same for personal consumption. The taverns were closed because of the imminence of their subjection to flood-waters. The inference is that if those premises and the liquor were not subjected to flood-waters the taverns would be reopened and the liquor in question sold in the usual course of business. Federal Retailer Liquor Tax Stamps were then outstanding covering the premises in question. At all times while the liquor remained at such premises, it was "held" at a place where it could be legally sold, but for its adulteration and misbranding. How long the distilled spirits in question remained at those locations after the flood subsided is not clearly established. However, from the wide-spread devastation of that national calamity, the Court can take judicial notice that it was several days after subsidation of the flood before there was any appreciable evacuation of goods from the area of destruction. From the agreed statement of facts, the only conclusion to be reached is that from the time the flood-waters descended until the liquor was removed from the above premises they became and were adulterated and misbranded within the meaning of the Federal Food, Drug, and Cosmetic Act, supra, while being "held for sale." The removal of such liquor from the premises where it was so held, after its adulteration and misbranding, did not withdraw such liquor from the ambit of that Act. "The purpose of the Act is to safeguard the consumer by applying its requirements to articles from the moment of their introduction into interstate commerce all the way to the moment of their delivery to the ultimate consumer, and the Act embraces misbranding [and adulteration] while held for sale after shipment in interstate commerce." United States v. 4 Devices, etc., 10 Cir., 176 F.2d 652, 654. Hence, the moment adulteration or misbranding occurs of an article which is subject to the Federal Food, Drug, and Cosmetic Act, the Act becomes applicable thereto, to the end that the declared purpose of the Act be carried out, that is, that the ultimate consumer be thereafter protected therefrom. We believe such protection is afforded, whether the article is thereafter sold or given away. When adulteration or misbranding occurs within the meaning of the Act, then an article is immediately subject to forfeiture, and we do not believe that there can be any further or subsequent movement of the article on its way to an ultimate consumer, that would not be in violation of the Act. Cf. United States v. Sullivan, 332 U.S. 689, 68 S.Ct. 331, 92 L.Ed. 297; Berger v. United States, 8 Cir., 200 F.2d 818; United States v. Kocmond, 7 Cir., 200 F.2d 370. Section 301(c) makes it unlawful to effect "the delivery or proffered delivery" of an article that has

become "adulterated or misbranded" within the meaning of the Act, whether "for pay or otherwise." Hence, it is not the holding for sale of an article subsequent to adulteration or misbranding that gives rise to the right of the Government to have a forfeiture thereof declared under Section 304(a) of the Act. 21 U.S.C.A. § 334(a). It is the fact of adulteration or misbranding of the article "while held for sale (whether or not the first sale) after shipment in interstate commerce". Clearly, under the agreed and undisputed facts, the intoxicating liquor in question became adulterated and misbranded "while held for sale".

Plaintiff's motion for summary judgment is by the Court sustained. Counsel prepare judgment entry accordingly. It Is So Ordered.