**BROWN–FORMAN DISTILLERS CORP. et al., Plaintiffs,**

**v.**

**F. David MATHEWS, Secretary of Health, Education and Welfare, et al., Defendants.**

**Civ. A. No. 76–0042–0.**

United States District Court,
W. D. Kentucky,
Owensboro Division.

Aug. 31, 1976.

**6**

Bert T. Combs, E. L. Galloway, Tarrant, Combs & Bullitt, Louisville, Ky., Charles N. Brower, White & Case, Washington, D.C., for plaintiffs.

George J. Long, U.S. Atty., Western District of Ky., Louisville, Ky., for defendants.

## MEMORANDUM OPINION

JAMES F. GORDON, Senior District Judge.

■ Plaintiffs[1] in this action seek a declaratory judgment that neither the Food and Drug Administration, hereinafter FDA, nor the Department of Health, Education and Welfare possesses the jurisdiction or authority to require or to regulate the *labeling*[2] of alcoholic beverages. They also

---

1. Plaintiffs in this action include (i) eight United States distillers and one United States winemaker, (ii) the Distilled Spirits Council of the United States, Inc., whose members produce approximately 95 per centum of all distilled spirits produced annually in this country, (iii) the National Association of Alcoholic Beverage Importers, Inc., which is the principal trade association of importers of distilled spirits and wine, and (iv) the Wine Institute, whose members produce annually 80 per centum of all wine produced annually in this country.

2. While plaintiffs argue that alcoholic beverages are not subject to the *labeling* requirements of the Federal Food, Drug and Cosmetic Act of

seek injunctive relief to prohibit the application to such beverages of the labeling provisions of the Federal Food, Drug and Cosmetic Act of 1938, 21 U.S.C. § 301, *et seq.*, hereinafter the 1938 Act, and related regulations promulgated by FDA.

American government in the twentieth century has grown far beyond the initial three branches of government envisioned and established in Articles I through III of the United States Constitution. This growth has largely been the result of the rapid multiplication of government bodies called administrative agencies.

Administrative agencies oversee or regulate in the areas which have been delegated to them. Theoretically each agency has its own particular area of concern and its jurisdiction is limited to that area. Sometimes, however, the body delegating authority to the agency writes the agency's enabling act in such a manner that there is an actual or apparent overlap of jurisdiction over a particular subject matter between two agencies. Therein lies this case.

This litigation represents several questions including whether one administrative agency, the Bureau of Alcohol, Tobacco and Firearms, hereinafter BATF, has exclusive jurisdiction to regulate the labeling of alcoholic beverages or whether such labeling regulation rests concurrently with the BATF and the FDA. Amazingly this particular query has taken nearly forty years to reach the federal courts. The reason for this delay is readily apparent once the factual background concerning this case is known.

To understand fully the significance of recent events involving the parties in this lawsuit it is necessary to travel back to 1935. In that year Congress passed legislation known as the Federal Alcohol Administration Act, 27 U.S.C. § 201, *et seq.*, hereinafter called the 1935 Act. There is no question but that this legislation extends authority to regulate labeling of alcoholic beverages to the Secretary of the Treasury, who in turn has delegated that authority to

the BATF. In 1938 Congress enacted the Federal Food, Drug and Cosmetic Act, *supra.* Under the 1938 Act Congress granted the FDA affirmative labeling jurisdiction over "food." "Food" was defined, in part, as "articles used for . . . drink for man . . . ." 21 U.S.C. § 321(f). Given the expansive definition of food the FDA believes that it has concurrent jurisdiction with the BATF to regulate the labeling of alcoholic beverages.

Recognizing an apparent potential for conflicting and redundant regulatory action over the labeling of alcoholic beverages arising from the seemingly overlapping jurisdictional grants set forth in the 1935 and 1938 Act, the FDA published on April 11, 1940 (only four months after the effective date of 21 U.S.C. § 343(i) requiring for the first time ingredient labeling of all "food"), Trade Correspondence No. 224, wherein the agency declared:

"While we have indicated that cordials, liqluers, wine and whiskey are subject to the Act [the 1938 Act], we will continue as in the past to leave to the Federal Alcohol Administration the regulation of the labeling of these alcoholic beverages under the more specific Federal Alcohol Administration Act.

"While beer is classed as food under the Act and would, therefore, be subject to the adulteration and misbranding provisions of that Act when shipped within its jurisdiction, we expect to continue our policy of not duplicating the work of the Federal Alcohol Administration with respect to the labeling of such products. That Administration, as you know, is charged with the enforcement of specific legislation dealing with alcoholic beverages."

1 Toulmin, *Law of Food, Drugs, and Cosmetics*, Section 109 at 157 (1963).

For thirty-five years, from 1940 until 1975, the FDA never took any significant affirmative steps to regulate the labeling of alcoholic beverages. During this same peri-

1938, 21 U.S.C. § 301, *et seq.*, they concede that alcoholic beverages are subject to the adultera-

tion provisions of the act. *Plaintiffs' Reply Brief* at 16.

od BATF was actively engaged in regulating all aspects of the labeling of alcoholic beverages. See 27 C.F.R. Parts 4, 5 and 7.[3]

On October 8, 1974, FDA and BATF entered into a Memorandum of Understanding confirming that BATF would continue to have the primary responsibility for the regulation of the labeling of alcoholic beverages. 39 Fed.Reg. 36127. This Memorandum of Understanding also stated that the BATF in consultation with FDA was developing comprehensive ingredient labeling regulations with respect to distilled spirits, wine and malt beverages pursuant to the 1935 Act which regulations would be in consonance with the 1938 Act and regulations promulgated thereunder. These proposed regulations with respect to ingredient labeling were published by BATF on February 11, 1975. 40 Fed.Reg. 6349–6360.

For six days BATF held public hearings with respect to the proposed ingredient labeling regulations during which the agency, in accordance with the notice and comment provisions of the Administrative Procedure Act, 5 U.S.C. § 553, considered the views of industry representatives, consumer groups and nonindustry experts, including in excess of 1000 written comments. Having extensively studied the question BATF in early November, 1975, withdrew its ingredient labeling proposals. The agency based its withdrawal on five explicit findings:

. . . First, that it appears the cost of ingredient labeling to the industry, and ultimately to the consumer, would be excessive in relation to the benefits received.

\* \* \* \* \* \*

Second, the content of alcoholic beverages is extensively regulated at the present time.

\* \* \* \* \* \*

Third, the uniqueness of manufacturing processes of alcoholic beverages is such that it makes labeling of their ingredients of little value and, in certain cases, even misleading.

\* \* \* \* \* \*

Fourth, representations were made that ingredient labeling requirements would hinder the on-going multilateral trade negotiations in expanding international trade.

\* \* \* \* \* \*

Finally, ingredient labeling is supported by only a small segment of the public.

\* \* \* \* \* \*

In view of the foregoing, we have concluded that the public interest would not be served by the adoption of the proposed amendments at this time.

40 Fed.Reg. at 52613.

Within weeks of the BATF's decision to withdraw its notice of proposed rulemaking, the FDA acted. The FDA issued a ruling announcing that "because of [BATF's decision not to require ingredient labeling] the memorandum of understanding [with BATF] has been terminated by FDA." The notice then stated:

This notice advises manufacturers and other affected persons that FDA will take regulatory action to enforce the food labeling requirements of the Federal Food, Drug, and Cosmetic Act, and regulations promulgated thereunder, in respect to alcoholic beverages shipped in interstate commerce after January 1, 1977.[4]

40 Fed.Reg. at 54455. Prior to the publication of this decision by FDA, no notice or opportunity to comment were accorded to any interested persons.

---

**3.** The extent of the labeling regulation by BATF is shown by the fact that since 1935 it "has approved and certified approximately 500,000 spirit labels. In 1975 alone BATF reviewed 23,112 applications for the approval of distilled spirits labels. Of this figure 492 proposed labels were found by BATF to be deficient and certifications accordingly were denied." *Plaintiffs' Reply Brief* at 12 n.\*.

**4.** On July 1, 1976, the FDA postponed the date for enforcement of its labeling requirements with respect to alcoholic beverages until January 1, 1978. 41 Fed.Reg. 27102.

Given the above-stated action by the FDA the plaintiffs believe they are confronted with two varying and conflicting regulatory regimes established by two different administrative agencies pursuant to two different statutes; hence, they filed suit for declaratory and injunctive relief.

The case is now before us on cross-motions for summary judgment.[5] To analyze properly the question whether the BATF has exclusive jurisdiction over regulating labeling of alcoholic beverages or whether such jurisdiction is held concurrently with the FDA, the Court must examine both the legislative history of the 1935 and 1938 Acts and the statutes themselves.

Immediately after the repeal of the Prohibition Amendment, the 18th Amendment to the United States Constitution, in 1933, by the 21st Amendment, President Roosevelt created by executive order the Federal Alcohol Control Administration, hereinafter FACA, which was to regulate the liquor industry until Congress could enact new legislation. Exec. Order No. 6474 (Dec. 4, 1933). The Supreme Court, however, held unconstitutional the National Industrial Recovery Act of 1933, 48 Stat. 195, under which the FACA had been created. *Schechter Poultry Corp. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935).

Recognizing the absence of a regulatory body for the alcoholic beverage industry, Congress took immediate action and commenced work on legislation which eventually was signed into law on August 29, 1935, only three months after the *Schechter* decision.

The Department of Agriculture, of which FDA was a part, actually recommended to Congress that special legislation be enacted concerning regulation of the liquor industry. The Secretary of Agriculture stated:

Misbranding of beverage whisky amounting to definite misrepresentation prompts administrative action. However, the character of the liquor traffic obviously makes special legislation necessary. Rep. of Sec. of Agric. (1934) at 85.

H.R. 8870, which was to become the 1935 Act, was reported favorably to the House by the Ways and Means Committee. It was noted by the committee that existing laws including the food and drug laws (which presumably was a reference to the Pure Food and Drug Act of 1906, 34 Stat. 768, hereinafter 1906 Act) were insufficient. H.R.Rep. No. 1542, 74th Cong. 1st Sess. at 3 (1935). The Committee insisted the new legislation must include affirmative labeling provisions. It stated:

They . . . must make provision for informing the consumer adequately as to the identity and quality of the product, its alcoholic content, the net contents of the package, and the person responsible for the package or the advertisement. *Id.* at 12.

Hence, the 1935 Act specifically was to include and did include labeling authority not only to prohibit falsity and deception, which was the extent of the labeling authority possessed by the FDA under the 1906 Act; but, the 1935 Act expanded the scope of labeling authority so that the BATF could require, among other things, the identity and quality of the product and the net contents of the package. In brief, it is patent that Congress placed in the hands of the Secretary of the Treasury and through him the BATF affirmative labeling authority over alcoholic beverages.

Does the legislative history of the 1938 Act demonstrate that Congress intended to give the FDA concurrent jurisdiction over regulating the labeling of alcoholic beverages?

S. 5, 75th Congress, was the bill which was enacted into law on June 25, 1938, under the title of the Federal Food, Drug and Cosmetic Act. As introduced the bill contained the following definition of "food":

The term "food" includes all substances and preparations used for, or entering

---

5. Although the defendants' motion is styled as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the defendants have supported their argument with materials outside the pleadings, thus, we shall consider their motion as one for summary judgment.

into the composition of, food, drink, confectionary, chewing gum, or condiment for man or other animals.

Sec. 2(g), S. 5, reprinted in Dunn, *Federal Food, Drug, and Cosmetic Act*, G. E. Stechert & Co., New York (1938) at 638, sometimes hereinafter termed Dunn.

The definition of food remained unchanged when the bill was referred to the Commerce Committee. The bill also contained this statement:

For purposes of enforcement of this Act, records kept by the Treasury Department in accordance with laws, and regulations thereunder, relating to alcoholic beverages and medicinal liquors, shall be open to inspection by any official of the Department of Agriculture duly authorized by the Secretary of Agriculture to make such inspections.

Section 25(c).

This bill, as passed by the Senate on March 9, 1937, was sent to the House of Representatives where it was referred to the Committee on Interstate and Foreign Commerce. The bill was reported by the Committee, with amendments, on April 14, 1938. The amendments made by the House Committee included minor changes in the definition of "food" and in the provision concerning access to records.

The definition of "food," as enacted is:

The term "food" means (1) articles used for food or drink for man or other animals, (2) chewing gum, and (3) articles used for components of any such article.

21 U.S.C. § 321(f).

The access to records provision upon enactment stated:

For purposes of enforcement of this chapter, records of any department or independent establishment in the executive branch of the Government shall be open to inspection by any official of the Department [of Agriculture] duly authorized by the Secretary to make such inspection.

21 U.S.C. § 372(c).

The House Committee's report also included the following provision concerning the scope of the word "food":

The definition of food is simply a clarification of the definition in the Food and Drugs Act of June 30, 1906.

Committee on Interstate and Foreign Commerce, House of Representatives Report No. 2139, 75th Congress, 3d Session, April 14, 1938, (Dunn at 815ff, 817).

Much dispute within the parties' able briefs has centered on the remarks of Congressman Virgil Chapman, a representative from the Commonwealth of Kentucky, during hearings on what eventually became the 1938 Act. Congressman Chapman, the Chairman of the House subcommittee which held hearings on the 1938 Act, addressed the following question to the State Health Commissioner of Kentucky:

Mr. Chapman: Doctor, what would be your opinion, if I might ask, of an amendment which I expect to have, or attempt to have, written into this bill which would extend its provisions so as to include whisky and require adequate labeling that would disclose the various ingredients contained in a bottle that is labeled as 'whisky,' so as to show what proportion of it is whisky and what proportion of it is water. . . .

Hearings on S. 5, H.R. 6906, 8805, and 8941 before Subcom. of House Committee on Interstate and Foreign Commerce, 74th Cong., 1st Sess. at 106 (1935).

During this discussion of the pending legislation Congressman Cole interjected the following comment:

Might I say we passed in the House a very drastic alcohol-control bill yesterday, and it strikes me that it is more properly the place for any subject dealing with whisky.

*Id.* at 107.

Congressman Chapman's remark focuses on another important aspect of the legislative history of the 1938 Act. From 1933 until 1938 Congress worked on several bills to amend the 1906 Act. During this time Mr. Chapman led several attempts to amend the proposed bills to include a

"straight" whiskey amendment. The purpose of his "straight" whiskey amendment was to make it impossible for "blended" whiskey to be labeled and sold as whiskey. The "blended" whiskey interests, however, were very strong in the Senate and the outcome of Mr. Chapman's attempts to amend these bills was that they were not enacted into law.

 Legislative history is only one tool by which the Court can uncover congressional intention. Another device is to review the statutory language itself. In fact review of the legislative enactments themselves is the keystone of statutory construction.

The 1935 Act, among other things, sets forth criminal sanctions for any person who sells, receives or ships "distilled spirits" or "wine" unless such alcoholic beverages are bottled, packaged and labeled pursuant to the regulations prescribed by BATF with respect to packaging, marking, branding, and labeling in addition to size and fill of container.

In 27 U.S.C. § 205(e) Congress authorized the Secretary of the Treasury to prescribe such labeling regulations:

(1) as will prohibit deception of the consumer with respect to such products or the quantity thereof and as will prohibit, irrespective of falsity, such statements relating to age, manufacturing processes, analyses, guarantees, and scientific or irrelevant matters as the Secretary of the Treasury finds to be likely to mislead the consumer;

(2) as will provide the consumer with adequate information as to the identity and quality of the products, the alcoholic content thereof (except that statements of, or statements likely to be considered as statements of alcoholic content of malt beverages are prohibited unless required by State law and except that, in the case of wines, statements of alcoholic content should be required only for wines containing more than 14 per centum of alcohol by volume), the net contents of the package, and the manufacturer or bottler or importer of the product;

(3) as will require an accurate statement, in the case of distilled spirits (other than cordials, liqueurs, and specialties) produced by blending or rectification, if neutral spirits have been used in the production thereof, informing the consumer of the percentage of neutral spirits so used and of the name of the commodity from which such neutral spirits have been distilled, or in case of neutral spirits or of gin produced by a process of continuous distillation, the name of the commodity from which distilled;

(4) as will prohibit statements on the label that are disparaging of a competitor's products or are false, misleading, obscene, or indecent; and

(5) as will prevent deception of the consumer by use of a trade or brand name that is the name of any living individual of public prominence, or existing private or public organization, or is a name that is in simulation or is an abbreviation thereof, and as will prevent the use of a graphic, pictorial, or emblematic representation of any such individual or organization, if the use of such name or representation is likely falsely to lead the consumer to believe that the product has been indorsed, made, or used by, or produced for, or under the supervision of, or in accordance with the specifications of, such individual or organization . . . .

In addition Congress in the final paragraph of 27 U.S.C. § 205(e) enacted a program requiring the Secretary of the Treasury to approve all labels which were to be affixed to bottles filled with distilled spirits and wines, if such beverages pass through interstate or foreign commerce.

Three years later Congress pursuant to the 1938 Act delegated affirmative labeling authority to the FDA. The 1938 Act makes it a misdemeanor and, in certain cases, a felony to deliver or to receive in interstate commerce any "misbranded" "food." Failure to comply with the 1938 Act authorizes the seizure of the "food."

As stated above, "food" as defined in the 1938 Act means:

(1) articles used for food or drink for man or other animals, (2) chewing gum, and (3) articles used for components of any such article.

21 U.S.C. § 321(f).

The ingredient labeling authorization explicitly appears within the 1938 Act. It states:

"A food shall be deemed to be misbranded—

(i) If it is not subject to the provisions of subsection (g) of this section [authorizing promulgation of "standards of identity"] unless its label bears (1) the common or usual name of the food, if any there be, and (2) in case it is fabricated from two or more ingredients, the common or usual name of each such ingredient; except that spices, flavorings, and colorings, other than those sold as such, may be designated as spices, flavorings, and colorings without naming each: Provided, That, to the extent that compliance with the requirements of clause (2) of this subsection is impracticable, or results in deceptions or unfair competition, exemptions shall be established by regulations promulgated by the Secretary."

21 U.S.C. § 343(i).

The question now becomes: Given the statutory language found in the 1935 and 1938 Acts and the applicable legislative history, did Congress intend to grant labeling jurisdiction over alcoholic beverages exclusively to BATF or concurrently between BATF and FDA. This is a question of first impression.[6]

■ We agree with the defendants that the "plain meaning" of the definition of food under the 1938 Act includes alcoholic beverages. Unfortunately, given the facts of this case the "plain meaning" of the word "food" as defined in the 1938 Act contributes little to our understanding of whether Congress intended the BATF to have exclusive jurisdiction over the labeling of alcoholic beverages or whether Congress intended BATF and FDA to have concurrent jurisdiction in that area. *See Train v. Colorado Public Interest Research Group,* 426 U.S. 1, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976). We also concede that Congress did not explicitly exempt alcoholic beverages from the purview of the 1938 Act, as it did "meat and meat products." 21 U.S.C. § 392(a). In addition we concur with the defendants that no provision in the 1938 Act limits the FDA's authority over alcoholic beverages to enforcing the adulteration provisions and not the misbranding (labeling) sections of the Act. Notwithstanding our agreement with these statements we are fully convinced that it was Congress' intention to place exclusive jurisdiction to regulate the labeling of alcoholic beverages in BATF. We base this conclusion on the contention that Congress *impliedly* excepted alcoholic beverages from the *misbranding* provisions of the 1938 Act. The Court believes this determination is supported by (1) the legislative history of the 1935 and 1938 Acts; (2) the statutes themselves; and (3) the actions of the FDA and BATF from 1938 to 1975.

Undoubtedly the 1935 Act is "special" legislation designed to deal with regulating the alcoholic beverage industry. At the time that act was passed by Congress it was generally recognized that the 1906 Act was not sufficient to regulate the newly legitimized alcoholic beverage industry. The 1935 Act is directed entirely at governmen-

---

**6.** The cases cited by the FDA arising under the 1906 Act which held the term "food" under that Act included alcoholic beverages are inapplicable to this case because they precede the enactment of the 1935 Act, where Congress created a specific and comprehensive statute dealing with the regulation of alcoholic beverages. Similarly, the "labeling" authority under the 1906 Act was limited in nature and is distinct in kind from the labeling authority question presented here. The defendants place great reliance on *United States v. 1,800.2625* *Wine Gallons of Distilled Spirits,* 121 F.Supp. 735 (W.D.Mo.1954), hereafter *Wine Gallon.* Although *Wine Gallon,* as defendants contend, can be read as a "labeling" case the *Wine Gallon* Court was not presented with the complicated agency jurisdictional question that is argued in this case, and, in fact the *Wine Gallon* case is not a 21 U.S.C. § 343(i) action. We think *Wine Gallon* is to a large extent distinguishable from this case, and to the extent it is indistinguishable we choose not to follow it.

tal control and regulation of alcoholic beverages. Importantly, the Congress specifically considered whether to give the Secretary of the Treasury affirmative labeling authority; and, it concluded in the affirmative by drafting a comprehensive provision in excess of 1,000 words dealing with the Secretary's labeling authority. 27 U.S.C. § 205(e).

In contrast the 1938 Act is broad in scope. Significantly, during the legislative discussions concerning what was to become the 1938 Act the subject of alcoholic beverages is rarely mentioned. When alcoholic beverages were discussed it was generally in relation to the "straight" whiskey amendments.

Congressman Chapman's remarks concerning an early draft of the 1938 Act indicates he did not believe that alcoholic beverages fell within the *labeling* sections of the proposed legislation.[7] He stated:

> Mr. Chapman: Doctor, what would be your opinion, if I might ask, of an amendment which I expect to have, or attempt to have, written into this bill which would *extend its provisions to include whisky and require adequate labeling* that would disclose the various ingredients contained in a bottle that is labeled 'whisky'
> . . . .

Emphasis added. Hearings on S. 5, H.R. 6906, 8805, and 8941, Subcommittee of House Committee on Interstate and Foreign Commerce, 74th Congress, 1st Session at 106 (1935). Obviously, the congressman did not think the draft of the bill included whiskey within the misbranding (labeling) sections of the act because he thought an amendment was needed to *extend* the legislation to include whiskey labeling before that subject would be covered. Congressman Chapman's amendment, which was introduced as part of his "straight" whiskey fight, was defeated. The fact that Congressman Chapman's statement was made during discussions of an early draft of the 1938 Act does not materially limit its relevance because no showing was made by the defendants that the remarks would not equally have been applicable to the draft which actually became the 1938 Act.

The statutes themselves demonstrate Congress' intention to place exclusive jurisdiction over the regulation of alcoholic beverage labeling in the Secretary of the Treasury, and through him the BATF. The 1935 Act is specific legislation dealing directly with the alcoholic beverage industry. The 1938 Act is broad in scope and can be argued to apply to alcoholic beverages only because the word "food" was defined expansively.

A basic rule of statutory construction to be applied to resolve a conflict between two different enactments each of whose literal terms cover a specific subject is that "where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one . . . ." *Morton v. Mancari*, 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974). The principle has been recently reaffirmed in *Radzanower v. Touche, Ross & Co.*, 426 U.S. 148, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976) wherein the Court stated:

> "It is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum. . . . 'The reason and philosophy of the rule is, that when the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute in general terms, or treating the subject in a general manner, and not expressly contradicting the original act, shall not be considered as intended to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter act such a construction, in order that its words shall have any meaning at all.' T. Sedgwick, The Interpretation and Con-

---

7. In fact Congressman Chapman's remarks when coupled with Congressman Cole's statement, see *supra* at 10, can be read to indicate that neither congressman considered "alcoholic beverages" to be food, as that term was then defined in the draft.

**14**

struction of Statutory and Constitutional Law 98 (2d ed. 1874)."

426 U.S. at 153, 96 S.Ct. at 1992–1993.

The defendants argue that the above-stated statutory construction device does not apply to this case. They contend:

> Only if there is irreconcilable conflict between two statutes may a court consider the extraordinary ruling that one does not apply to a subject that it would otherwise encompass. FDA regulation of the labeling of alcoholic beverages under the FDA Act is *not* in conflict with BATF regulation of alcoholic beverage labeling so as to justify reading into the FDA Act an exemption that is nowhere expressed.

*Defendants' Rejoinder Brief* at 4. (Original emphasis).

Notwithstanding the defendants' argument to the contrary there is direct conflict between the 1935 and 1938 Acts. This conflict is not likely to seem irreconcilable to the agency seeking to extend its largess into an area not previously regulated by it; however, the conflict appears to be irreconcilable to the Court and certainly to the plaintiffs, the parties being regulated.

The 1935 Act requires the Secretary of the Treasury to prohibit by regulation certain statements on labels where those statements are "likely to mislead the consumer," even though they may *not* be false. 27 U.S.C. § 205(e)(1) (Emphasis added). See also 27 C.F.R. 5.42(a)(1). In fact, one of the five explicit reasons set forth by the BATF in rejecting the idea of ingredient labeling for alcoholic beverages was that in certain cases ingredient labeling would be misleading. The 1938 Act, on the other hand, requires the labeling of *all* ingredients regardless of the fact that such labeling may be potentially misleading. Only if the FDA grants an "exemption" from its basic all-inclusive ingredient labeling requirements can the regulated party fail to list all ingredients on the product.

Another statutory conflict deals with information concerning the alcoholic content of the beverage. The 1935 Act declares that BATF shall promulgate such regula-tions "as will provide the consumer with adequate information as to the . . . alcoholic content thereof . . . ." 27 U.S.C. § 205(e)(2). No similar requirement is found in the 1938 Act. 21 U.S.C. § 343(e)(2) merely requires a statement of the total contents of the package. 27 U.S.C. § 205(e)(2) also specifically requires that statements of the alcoholic content of malt beverages are prohibited unless required by state law. In the case of wines statements of alcoholic content may be required only for wines containing more than 14% of alcohol by volume. 27 U.S.C. § 205(e)(2). No comparable provisions exist in the 1938 Act.

Albeit FDA as a regulator can argue that such statutory conflicts are not irreconcila-ble, it cannot be denied that the labeling requirements of the 1935 and 1938 Acts, as construed by the BATF and FDA through promulgated regulations, subject the plain-tiffs to "duplication and inconsistent stan-dards." *United States v. National Ass'n of Securities Dealers*, 422 U.S. 694, 735, 95 S.Ct. 2427, 45 L.Ed.2d 486 (1975). In other words the labeling regulations promulgated by each agency pursuant to its statutory authority highlight the incompatibility which exists between the regulatory schemes of the 1935 and 1938 Acts.

Of course, the first regulatory consistency is that which gives rise to this lawsuit. The BATF after extensive hearings on the ques-tion of whether there should be ingredient labeling of alcoholic beverages withdrew its proposal to require such labeling. The FDA then announced that it would require ingredient labeling, as mandated by the 1938 Act.

Both statutes require that a statement of the net contents of the package appear on the label, 21 U.S.C. § 343(e)(2), 27 U.S.C. § 205(e)(2), but the regulations promulgated by the BATF and FDA as to this require-ment are in conflict. FDA requires that the label state the volume of liquid meas-ured at 68 deg. F., 21 C.F.R. 1.8(b)(2)(iii), whereas BATF requires measurement at 60 deg. F., 27 C.F.R. 5.11. Next, FDA allows the declaration of quantity to appear blown

into the surface of the bottle, rather than shown on the label, only when all required label information so appears. 21 C.F.R. 1.8(b)(h). In contrast, BATF allows the quantity to appear by itself on the bottle. 27 C.F.R. 5.38(a). Finally, the respective regulations contain inconsistent language with respect to the size of the declaration of contents required and as to the form of words that must be used to state the contents. *Compare* 21 C.F.R. 1.8b(h) *with* 27 C.F.R. 5.38(a), and 21 C.F.R. 1.8b(j)–(n) *with* 27 C.F.R. 6.38(b).

There are also conflicting regulations concerning the identity of manufacturers, bottlers and importers. These differences stem from the conflicting requirements of the Acts. *Compare* 27 U.S.C. § 205(e)(2) with 21 U.S.C. § 343(e)(1). These statutory conflicts are magnified because of the regulations. The FDA requires that the "declaration of the name of the manufacturer, packer, or distributor shall be deemed to be satisfied, in the case of a corporation, *only by the actual corporate name.* . . ." 21 C.F.R. 1.8a(b) (Emphasis added). BATF requires under its regulations that "the name (*or trade name*)" of the bottler, 27 C.F.R. 5.36(a)(1), or distiller, 27 C.F.R. 5.36(a)(2), or rectifier, 27 C.F.R. 5.36(a)(3), must appear on the label. (Emphasis supplied). In addition, the regulations differ as to the details that must be given about the address of the producer. FDA requires the street address, city, state and zip code be given, 21 C.F.R. 1.8a(d), while BATF requires "post office address; except that the street address may be omitted," 27 C.F.R. 5.36(c).

The two regulatory agencies also differ on the labeling of "imitations." The 1938 Act provides that a food is misbranded "if it is an imitation of another food, unless its label bears in type and uniform size and prominence the word 'imitation' and, immediately thereafter, the name of the food imitated." 21 U.S.C. § 343(c). The FDA has decided the term "imitation" means a food which "is a substitute for and resembles another food but is nutritionally inferior to that food." 21 C.F.R. 1.8(e)(1). The 1935 Act, conversely, confers broad discre-

tion in BATF to determine whether alcoholic beverages must be labeled as imitations. 27 U.S.C. § 205(e)(2).

The FDA attempts to demonstrate that these conflicts in the statutory mandate given to the two agencies as well as the conflicting regulations promulgated by FDA and BATF are not significant for the two agencies can work out a compromise by adopting a Memorandum of Understanding. Such a memorandum would state that, "except for the matter of ingredient labeling, FDA will accept labels approved by BATF as being in compliance with the FDC Act." *Defendant Schmidt's Affidavit* at 3. This argument is unpersuasive for several reasons. First, while the Court agrees that agencies should attempt to work out theoretical conflicts between themselves we do not believe that it is legally proper for an agency to ignore its statutory obligations, as construed in promulgated regulations. Thus, if we accepted Commissioner Schmidt's approach to this problem we would be authorizing the FDA to blind itself to the regulations it does not wish to see but to view squarely the regulation it wishes to enforce. Such is an untenable position. Second, such a memorandum as envisioned by Commissioner Schmidt would ostensibly be similar to the agreement, also termed a memorandum of understanding, signed by BATF and FDA on October 8, 1974, concerning ingredient labeling of alcoholic beverages. As such it would not be binding on either agency and could, therefore, be rescinded. We have already seen that FDA has a quick "trigger finger" when it comes to rescinding inter-agency agreements which no longer suit its purpose. See 40 Fed.Reg. 54455 (FDA rescission of the October 8, 1974, Memorandum of Understanding with BATF). Hence, such a Memorandum of Understanding, as proposed by Commissioner Schmidt, has little lasting value. Finally, the Commissioner's proposed agreement underlines the irreconcilable conflict that exists between BATF and FDA on the question of ingredient labeling. By excluding ingredient labeling from the scope of the proposed memoran-

dum the Commissioner has conceded that the agencies cannot reconcile this difference.

It is patent, therefore, that the 1935 and 1938 Acts when coupled with the regulations promulgated thereunder do establish conflicting regulatory requirements concerning the labeling of alcoholic beverages.

Thus, it is our opinion that Congress intended the 1935 Act, which contains a specific and comprehensive provision dealing with labeling of alcoholic beverages, to govern the labeling of such products *to the exclusion of the misbranding provisions of the 1938 Act.* Given the above-stated conflicting statutory and regulatory framework it is clear that had we held the labeling jurisdiction of the FDA to be concurrent with that of the BATF, the alcoholic beverage industry would be "subjected to duplicative and inconsistent [labeling] standards." *Securities Dealers, supra* at 735, 95 S.Ct. at 2450. As the Supreme Court declared in *Securities Dealers* : "This is hardly a result that Congress would have mandated." *Id.* In sum, we hold that it was the implied intention of the Congress to grant exclusive labeling jurisdiction over alcoholic beverages to the BATF.

In so holding we specifically refuse to accept the defendants' contention that Congress' failure to exclude specifically the labeling of alcoholic beverages from the provisions of the 1938 Act, under 21 U.S.C. 392(a) or 392(b), was a dispositive indication of Congress' intention to include labeling authority over alcoholic beverages within the jurisdiction of the FDA. Although such an explicit statement would have been simple for Congress to include within the Act, its failure to do so is not dispositive given the fact that (1) legislative history, especially Congressman Chapman's remarks concerning an early draft of the 1938 Act, demonstrates that Congress did *not* believe the 1938 legislation included labeling authority over alcoholic beverages; and, (2) three years prior to the 1938 Act Congress had previously passed legislation related directly to alcoholic beverages which included a specific and comprehensive section on la-

beling of such beverages, an act which was not by specific language repealed, modified or limited in any respect by the 1938 Act. To accept the defendants' argument we would have to believe that Congress intended to *inflict* upon the alcoholic beverage industry conflicting labeling requirements. We refuse to make such an assumption.

Our determination that labeling jurisdiction over alcoholic beverages rests exclusively within the BATF is supported by actions of FDA and BATF during the last thirty-eight years.

Although the FDA had, pursuant to the 1906 Act, general jurisdiction to prevent deceptive labeling of foods, such authority, as applied to alcoholic beverages was implicitly repealed by Congress when it enacted the 1935 Act, an act which placed comprehensive authority to regulate all areas of the labeling of alcoholic beverages under the auspices of the Secretary of the Treasury. Hence, from 1935 until the enactment of the 1938 Act the BATF (or its predecessor) undoubtedly possessed exclusive labeling jurisdiction over alcoholic beverages.

On April 11, 1940, the FDA stated its position on the labeling of alcoholic beverages. In FDA Trade Correspondence No. 224 the agency wrote that alcoholic beverages "are subject to the (1938) Act," yet, the FDA would leave the regulation of the labeling of such beverages to what is now the BATF. The FDA continued to hold this position until November, 1975. In short for nearly forty years the FDA never took any significant affirmative steps to regulate the labeling of alcoholic beverages. In contrast BATF (or its predecessor) has been actively involved in comprehensively regulating all aspects of alcoholic beverage labeling during this same time period. 27 C.F.R. Parts 4, 5 and 7.

█ We cannot ignore the fact that for nearly forty years the FDA was content on merely standing on its assertion that it had concurrent labeling jurisdiction over alcoholic beverages while the BATF was thoroughly engaged in regulating the labeling of alcoholic beverages. The fact that FDA

asserted in 1940 that it has concurrent jurisdiction in this area is of no particular importance because the scope of the FDA's authority does not rest on its assertion of authority but on the actual jurisdiction conferred upon it by Congress through legislative enactment, as construed by the Courts.

Importantly, the FDA was actively involved during this thirty-eight year period with promulgating detailed labeling regulations with respect to various kinds of food, 21 C.F.R. Part 1, but not for alcoholic beverages. In addition, the FDA did actively enforce the adulteration provisions of the 1935 Act with regard to alcoholic beverages. *See e.g. United States v. Commonwealth Brewing Co.*, (D.Mass.1945), reported in Kleinfeld and Dunn, *Federal Food, Drug and Cosmetic Act* 1938–1949 at 310. Hence, the actions of the FDA during the last thirty-eight years support the conclusion that while Congress intended the FDA to have the authority to enforce the adulteration provisions of the 1938 Act with respect to alcoholic beverages it did not intend the FDA to have concurrent jurisdiction with BATF concerning the labeling of alcoholic beverages.

It is also important for the Court to point out that the labeling of alcoholic beverages is currently being extensively regulated by BATF. See 27 C.F.R. Parts 4, 5 and 7; *See also* footnote 3, *supra.* Significantly, BATF spent six days in public hearings listening to many representatives from the alcoholic beverage industry, consumer groups and other interested persons on the precise issue of ingredient labeling of alcoholic beverages. In addition BATF reviewed over 1,000 written comments on the question of ingredient labeling. Having extensively reviewed this subject BATF decided to withdraw its proposed regulation concerning ingredient labeling. The agency based its decision on five explicitly stated reasons: (1) the cost of ingredient labeling for alcoholic beverages (to the industry and ultimately to the consumer) "would be excessive in relation to the benefit received;" (2)

the actual content of alcoholic beverages already is "extensively regulated;" (3) the labeling of ingredients would be "of little value and, in certain cases, even misleading;" (4) such requirements might hinder current international trade negotiations; and (5) "ingredient labeling is supported by only a small segment of the public." 40 Fed.Reg. 52513. What these facts demonstrate is that BATF has over the years been diligent in regulating the labeling of alcoholic beverages; and, this diligence was also demonstrated in the manner in which BATF considered the question of ingredient labeling for alcoholic beverages.

We find it difficult to believe that Congress in its wisdom would create two administrative agencies under two acts, which give rise to two conflicting regulatory schemes, to oversee one subject matter, alcoholic beverage labeling, especially when the agency which all concede is primarily responsible for regulating the alcoholic beverage industry has been doing an efficient and effective job for over forty years.

We believe it was Congress' intention to place exclusive jurisdiction in BATF with respect to regulating the labeling of alcoholic beverages. Ergo, we shall sustain plaintiffs' motion for summary judgment. Having granted the plaintiffs' motion for the above-stated reason we need not decide the remaining issues presented to us by the plaintiffs.

A separate judgment shall this day be entered in conformance with this Memorandum Opinion.